RECEIVED
JAN 23 2015
AT 8:30_____M
WILLIAM T. WALSH CLERK

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTIN GEVERS, | |
| Petitioner, | Civil Action No. 12-1541 (FLW) |
| v. | OPINION |
| THE UNITED STATES, | |
| Respondent. | |

**Wolfson, District Judge:**

This matter is presently before the Court on a Motion to Vacate, Set Aside or Correct Sentence ("Motion") filed by Petitioner Martin Gevers ("Petitioner") pursuant to 28 U.S.C. § 2255, challenging his 71-month sentence imposed by this Court for wire fraud and money laundering. For the reasons stated below, the Court dismisses the Motion with prejudice.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2010, Petitioner was arrested and charged with one count of wire fraud under 18 U.S.C. § 1343, and one count of money laundering under 18 U.S.C. § 1957(a).[1] (Crim. Dkt. 27.) On November 9, 2010, a plea agreement was reached, which the Court accepted. (Crim. Dkt. 30; Dkt. 7, Ex. I at 39-40.) On March 10, 2011, the Court sentenced Petitioner to a 71-month term of imprisonment on each count to run concurrently. (Crim. Dkt. 32.)

In the plea agreement, Petitioner stipulated to these relevant facts:

1. The loss amount from Petitioner's offenses exceeded $400,000 but was less than $2,500,000. (Crim. Dkt. 30, Ex. A ("Plea") at 7.)

---

[1] The criminal case is 10-cr-763 (D.N.J. Nov. 9, 2010) ("Crim. Dkt.").

2. The offenses involved 10 or more victims. *Id.*

3. The Petitioner was entitled to a two-level downward adjustment for acceptance of responsibility. *Id.* at 8.

4. The Petitioner was entitled to a one-level downward adjustment for assisting in the prosecution of his own offenses. *Id.*

As the result of these stipulations, the government recommended to the Court an offense level of 21 if the Court finds that the total lost amount exceeds $400,000 but is less than $1,000,000, or a level of 23 if the loss exceeds $1,000,000 but is less than $2,500,000. *Id.* at 9. The Court ultimately found that the loss exceeded $1,000,000 but was less than $2,500,000, and determined that an offense level of 23 was appropriate in imposing the 71-month sentence. (Dkt. 7, Ex. B ("Sentencing") at 22-24.)

More importantly, the plea agreement contained a waiver clause:

<u>Waiver of Appeal and Post-Sentencing Rights</u>

> As set forth in Schedule A, this Office and Martin_Gevers waive certain rights to file an appeal, collateral attack, writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255.

Plea at 4. Schedule A states, in relevant part:

> Martin Gevers knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 21, if the loss exceeds $400,000 but is less than $1,000,000 or 23, if the loss exceeds $1,000,000 but is less than $2,500,000. This Office will not file any appeal, motion or writ which challenges the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from the agreed total Guidelines offense level of 21, it the loss exceeds $400,000 but is less than $1,000,000 or 23, if the loss exceeds $1,000,000 but is less than $2,500,000. The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's

2

> determination of the criminal history category. The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

Plea at 10.

To ensure that Petitioner understood the rights he was waiving, the Court very carefully reviewed the plea agreement with Petitioner at the plea hearing:

> **Court**: Mr. Gevers, you are being shown the plea bargain letter in this matter. Have you read the entire plea agreement?
> **Defendant**: Yes.
> **Court**: Have you had an opportunity to discuss the agreement with your lawyer before you signed it?
> **Defendant**: Yes.
> **Court**: Please look at the agreement and let me know if your signature appears there.
> **Defendant**: Yes.
> . . . .
> **Court**: Mr. Gevers, do you feel with the explanations and advice of your attorney that you fully understand all of the terms of the plea bargain letter?
> **Defendant**: Yes.
> . . . .
> **Court**: Your plea agreement also provides, as Ms. Davenport has summarized, under certain circumstances you are waiving or giving up your right to file an appeal or collaterally attack the sentence imposed in this case. At this time I'm going to ask you some questions about that. Are you aware the law permits every defendant, such as yourself, as well as the government, to file an appeal of your sentence if either you or the government believes there had been an error?
> **Defendant**: Yes.
> **Court**: Do you also know you have a right, if you believe there has been an error, to file a collateral challenge to your conviction or sentence under 28 U.S.C. § 2255?
> **Defendant**: Yes.
> **Court**: And do you understand you give up your right to appeal or otherwise challenge your sentence in the situation set forth in your plea agreement?
> **Defendant**: Yes.
> **Court**: Specifically, do you understand if I impose a term of imprisonment that falls within or below the Guideline range that results from a Guideline offense level of 21 if the loss exceeds $400,000 but is less than a million dollars, or a Guideline offense level of 23 if the loss exceeds $1 million but is less than $2,500,000 or less, that you cannot appeal challenging your sentence?
> **Defendant**: Yes.

> **Court**: Do you understand if I impose a term of imprisonment within or below those ranges by whatever Guideline analysis that I think appropriate, that you will not be able to file an appeal, a Section 2255 petition, writ, motion, or collateral attack challenging your term of imprisonment or any other aspect of your sentence?
> **Defendant**: Yes.
> **Court**: Do you understand your plea agreement only allows you to challenge your sentence if I impose a term that is above those ranges or to challenge my determination of your criminal history category?
> **Defendant**: Yes.
> **Court**: Do you also understand the United States cannot appeal if your prison sentence is within or above those ranges, and that neither you nor the United States can appeal claiming that I should not have accepted your stipulations in the plea agreement?
> **Defendant**: Yes.
> **Court**: Did you discuss with your attorney this waiver of appeal and waiver of your right to file a collateral attack?
> **Defendant**: Yes.
> **Court**: And are you satisfied with the explanations that he has provided you?
> **Defendant**: Yes.

(Dkt. 7, Ex. I at 21-23.)

Significantly, the plea agreement does not prevent a challenge to the calculation of the Petitioner's criminal history. Plea at 10. Petitioner appealed his sentence to the Third Circuit, which challenged, among other things, this Court's calculation of Petitioner's criminal history. (Dkt. 7, Ex. E at 9.) The Third Circuit granted summary dismissal of the appeal due to the waiver provision, (Dkt. 38), denied rehearing *en banc* even after Petitioner pointed out that he may appeal the criminal history calculation, (Dkt. 7, Ex. F), and Supreme Court denied certiorari. (Dkt 7., Ex. H.)

Petitioner files the instant Motion, alleging a litany of errors by the government and this Court, and also alleging ineffective assistance of counsel.

### III. DISCUSSON

**A. Waiver**

"Criminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *U.S. v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008). "[W]aivers of appeal, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice." *U.S. v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005). This Circuit applies the same "miscarriage of justice" standard to both waivers of appeal and waivers of collateral review. *See Mabry*, 536 F.3d at 242-43.

To determine whether a miscarriage of justice would occur, the court considers, among other things, the following factors:

> The clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Smith v. U.S.*, No. 10-2769 (FLW), 2011 WL 2671517, at *5 (D.N.J. July 8, 2011) (quoting *U.S. v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001). Miscarriage of justice may occur in situations "when 'enforcing a collateral attack waiver would result in barring an appeal expressly preserved in the plea agreement,' or in a case where there were 'allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver.'" *Smith*, 2011 WL 2671517, at *5 (quoting *Mabry*, 536 F.3d at 243). Otherwise, "it is not enough that an issue is meritorious; after all, appellate waivers are intended to preclude review not just of frivolous questions, but of difficult and debatable legal issues we would otherwise consider." *U.S. v. Grimes*, 739 F.3d 125, 130 (3d Cir. 2014). Rather, the court should employ "a 'common sense' inquiry that 'look[s] to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver.'" *Smith*, 2011 WL 2671517, at *5 (quoting *Mabry*, 536 F.3d at 242-43).

Here, there is no question that Petitioner waived his right to collateral review. The plea agreement contained the following language right above the signature of Petitioner:

> I have received this letter from my attorney . . . I have read this letter. My attorney and I have discussed the letter and all of its provisions, including the provisions addressing the charges, sentencing, the stipulations, *waiver*, restitution and immigration consequences . . . I understand the letter fully . . . I want to plead guilty pursuant to this plea agreement.

Plea at 6 (emphasis added). Furthermore, as stated above, the Court went through an exhaustive colloquy to ensure that Petitioner understood the rights that he was waiving, and Petitioner answered all of the Court's questions in the affirmative. (Dkt. 7, Ex. I at 21-23.)

Petitioner does not deny that he voluntarily entered into the agreement, but instead now argues that he vehemently disagreed with the inclusion of the money laundering offense in the plea agreement, and he would have refused entering into the agreement if not for his counsel's promise that "his '3553 motion will trump everything they throw at you.'" (Dkt. 4 at 2.) The Court construes the reference to the "3553 motion" to refer to the motion that may be filed pursuant to 18 U.S.C. § 3553(d) that allows a defendant to present relevant matters that may influence the sentencing court in applying the § 3553(a) factors to determine a defendant's sentence. The Court further construes this statement to mean that counsel suggested to Petitioner that he would be successful in arguing for a more lenient sentence. However, at the plea hearing, the Court addressed this very issue:

> **Court**: Do you understand the United States Sentencing Guidelines are advisory and not mandatory?
> **Defendant**: Yes.
> **Court**: Thus, do you understand this Court may impose a sentence higher or lower than that recommended by the Guidelines?
> **Defendant**: Yes.
> **Court**: Are you aware the Sentencing Guidelines takes into account the actual conduct in which you engaged, considers the victims of your offense, the role that you played, and whether or not you have engaged in any obstruction of justice or have accepted responsibility for your acts?

6

> **Defendant**: Yes.
> . . .
> **Court**: Have you discussed the Sentencing Guidelines with your attorney?
> **Defendant**: Yes.
> **Court**: Has he explained to you the various considerations that go into determining what Guidelines shall be applied?
> **Defendant**: Yes.
> **Court**: Has your attorney predicted or estimated for you what he believes the Advisory Guideline range in this case may be?
> **Defendant**: Yes.
> **Court**: Do you understand, however, that at this point it may be impossible for him to make a completely accurate assessment as to the Guideline ranges which will apply in your case because he does not yet have all the necessary information and has not seen the Presentence Report?
> **Defendant**: Yes.
> **Court**: Do you understand you will not be able to withdraw your plea on the ground that anyone's prediction as to the Guideline range proved to be inaccurate?
> **Defendant**: Yes.
> . . .
> **Court**: Do you understand the sentence imposed may be different from any estimate your attorney may have given you?
> **Defendant**: Yes.

(Dkt 7, Ex. I at 26-28.)

In sum, even if Petitioner's attorney had made some kind of prediction as to the outcome of sentencing, the Court explicitly made sure Petitioner understood that it is impossible for such a prediction to be 100% accurate, and that the Court may impose a different sentence than the one Petitioner's lawyer may have predicted. Despite these explicit warnings, Petitioner still accepted the plea agreement. *See U.S. v. Ritter*, 93 Fed. App'x 402, 404-05 (3d Cir. 2004) (rejecting argument on collateral review that petitioner had been led astray by his counsel as to the effect of departure, stating that "[g]iven the record, the District Court did not abuse its discretion in denying Ritter's petition []. Whatever counsel had told Ritter, clearly there was no prejudice because Ritter was fully advised at the time of the taking of the plea that the District Court was not party to an agreement or promise of any kind"). Since Petitioner knowingly and voluntarily entered into the plea agreement, including the inclusion of the money laundering offense in the agreement, the

Court finds that there would be no miscarriage of justice to enforce the waiver, and thus the waiver is valid.[2]

## B. Ineffective Assistance of Counsel

Although the waiver, on its face, precludes Petitioner from making *any* collateral attacks of his sentence, the Court nevertheless will address Petitioner's ineffective assistance of counsel claims, particularly because Petitioner's claims involve conduct of his attorney at sentencing, after Petitioner had agreed to and signed the plea agreement. *See U.S. v. Bui*, 769 F.3d 831, 834 (3d Cir. 2014) (finding that the court may consider a collateral attack for ineffective assistance of counsel, despite the existence of a waiver, if that particular claim would render the plea agreement unenforceable as to that claim).

The Sixth Amendment guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134

---

[2] Indeed, by Petitioner's own admission, he objected to the inclusion of the money laundering offense *before* signing the plea agreement, (Dkt. 4 at 2), which means he was more than aware of the consequences of his consent to the plea agreement and the waiver.

S.Ct. 1081, 1083 (2014) (per curiam). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[3] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." *Hinton*, 134 S.Ct. at 1083. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 1089 (quoting *Strickland*, 466 U.S. at 695).

Petitioner challenges the effectiveness of counsel on three grounds. First, Petitioner attacks the amount of time given to him to review the final Presentence Report, and argues that his attorney failed to request more time. However, as the following exchange between the Court, the Petitioner, and Petitioner's attorney shows, this argument is contrary to what actually happened:

> **Court**: Mr. Murphy, have you had an opportunity to fully review the report with your client?
> **Counsel**: Your Honor, I fully reviewed the draft Presentence Report with my client at the jail. He advised me this morning he never received the final because of the mailing situation. I gave him a copy of it this morning. I pointed out to Mr. Gevers that the report and the draft Presentence Report were practically identical except for some minor changes made with regard to the objections that I had made as well as some responses to the objections that had been made in the body of the final Presentence Report at the end. I'm assuming Mr. Gevers had at least a chance to take a look at it in the Marshall's Office.
> **Court**: And the substance of the report. Mr. Gevers, have you reviewed the report and the substantive information in the report?
> **Defendant**: No, ma'am, not the final draft. I have not had an opportunity to look at it.
> **Court**: I'm going to stop. Mr. Murphy, take the time to have him make sure that he reviews the final report and confirm what, if any, differences, and they are very minor, that are there. It's essentially the same report. I want to make sure he reviews it and he has ample time to do that. So go ahead and do that. Thank you.
> **Counsel**: Thank you, your Honor.
> ... [Recess was taken] ...

---

[3] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

9

> **Court**: We adjourned for about an hour and a half so that Mr. Gevers would have the opportunity to read the final Presentence Report, and I know he had reviewed the draft. Mr. Murphy, at this time has Mr. Gevers had adequate opportunity to review the final report?
> **Counsel**: I believe it is my understanding he had an opportunity to review it. I sat down with him in the Marshall's Office. He read it before and after I was there. Is that correct, Mr. Gevers?
> **Defendant**: Yes, it is.
> **Court**: Are we ready to proceed?
> **Counsel**: We are ready to proceed.

Sentencing at 4-6.

Indeed, the record shows that Petitioner had reviewed the draft Presentence Report prior to the sentencing hearing; the Court gave him as much time as he needed to review the minor changes in the final report; the Court never imposed any time limit on how long Petitioner could take to review the final report; and it was Petitioner's decision, not the Court's, to take an hour and half to review the final report. At no point did Petitioner object to the amount of time given, nor did he urge his attorney to request more time. The Court finds that there was nothing unreasonable about the conduct of the Court nor Petitioner's counsel.

Second, Petitioner claims that counsel did not adequately refute the Court's finding that the amount of loss was greater than $1,000,000. Petitioner claims that initially, the parties had agreed that the amount of loss was less than $1,000,000. This is not in accord with the record. To begin, the plea agreement specifically set out two scenarios, one stipulating the offense level if the Court finds that the loss amount is more than $400,000 but less than $1,000,000, and another stipulating the offense level if the Court finds that the loss amount is more than $1,000,000 and less than $2,500,000. Plea at 9. If the parties were already in agreement as to the loss amount, there would be no reason for the plea agreement to contain two different stipulations; the very existence of the two stipulations suggest that the parties disagreed on the loss amount and instead

were going to rely on the Court's findings at sentencing. This also implies that the parties intended to present their own evidence and arguments as to the actual loss amount.

That is exactly what occurred at sentencing. The parties agreed that the loss amount for eight of the victims was $965,272. Sentencing at 8. The government then proffered evidence as to additional losses by three other victims. *Id.* at 8-13. Petitioner's counsel attempted to refute the government's evidence with regard to all three victims, but the Court rejected his arguments, primarily on the basis that Petitioner presented no evidence to substantiate his arguments. *Id.* at 14-21. As the Court stated, since the agreed-to amount was already very close to $1,000,000, the loss incurred by any one of the three victims would have pushed the loss amount beyond $1,000,000, so the Court was satisfied that by the preponderance of the evidence, the total loss amount was greater than $1,000,000, even if the exact figure might be in dispute. *Id.* There is simply no evidence that counsel had not provided effective assistance; he argued strenuously to dispute the government's claims, but the Court simply rejected his arguments.

Finally, Petitioner claims that counsel did not effectively demonstrate to the Court that he was willing and capable of making restitution to the victims, and therefore the Court should have been more lenient and sentenced Petitioner to something other than the high end of the recommended range. In particular, Petitioner points to (1) a report by his probation officer as evidence that he had complied with his restitution obligations from a previous conviction, (Dkt. 4, Ex. A), and (2) the dismissal of his bankruptcy proceeding as evidence that he did not try to discharge his debts to victims through bankruptcy. (Dkt. 4, Ex. B.) However, the Court *did* consider that evidence at the sentencing hearing. Sentencing at 51-52. In the end, the Court simply found Petitioner's evidence unconvincing, based on his 15-year history of committing fraud, even after having been convicted of multiple counts of fraud prior to the instant matter, and the fact that

Petitioner continued to commit fraud even while on bail for this case. *Id.* 49-55. As the Court concluded:

> So deterrence is a major concern of this Court because serving your federal sentence a number of years back certainly didn't deter you because when you got out, you were engaging in the same kind of activity. Putting you on bail with supervision didn't deter you, and nothing but a substantial custodial sentence can even come close. It is necessary to protect the public from your further crimes and other considerations.

*Id.* at 53-54. Any argument claiming that counsel was ineffective is unavailing; no one can escape the consequences of his choices, and counsel cannot make Petitioner's 15-year history of crimes and conduct on pretrial release disappear into thin air.

The Court also finds that there is no evidence to suggest that the outcome would have been different; in other words, Petitioner cannot satisfy the prejudice prong of the *Strickland* inquiry. To start, there is a presumption of reasonableness as to a district court's sentence when the sentence is, as it is here, within the range recommended by the Sentencing Guidelines. *See Rita v. U.S.*, 551 U.S. 338, 347-351 (2007). On the issue of adequate time to review the final Presentence Report, as the Court already noted, it was **Petitioner** who decided that an hour and half was enough time to review the final report – after having previously reviewed the substantially unchanged draft report. On the issue of the loss amount, the Court rejected Petitioner's arguments because there was a lack of evidence to support Petitioner's claims. At sentencing, Petitioner presented no evidence that he had made payments to any of the three victims in question beyond what the government had already credited him with, and even now, Petitioner presents no evidence in the instant Motion that any such payments were made. In fact, Petitioner himself admitted that the purported payments went through a third party who never paid them to the victims, *i.e.*, Petitioner was himself hoodwinked. Sentencing at 37. As the Court stated, that is irrelevant to the calculation of loss because the victims did not receive their monies. *Id.* at 17-18. Finally, on the issue of

leniency, the Court independently determined that Petitioner's criminal history and conduct on pretrial release warranted a sentence at the high end of the recommended range, and no argument counsel made or could have made would have changed the Court's decision.

To conclude, the Court finds that Petitioner has not identified any acts or omissions on the part of Petitioner's counsel that were not the result of reasonable professional judgment, and that there is no evidence that the outcome of this case would have been different even if counsel's conduct was deemed unreasonable. Petitioner has failed to satisfy both prongs of the *Strickland* test, so Petitioner is not entitled to relief for his ineffective assistance of counsel claims.

### C. Criminal History Calculations

Lastly, the Court specifically addresses Petitioner's claim that the Court erred in its calculation of Petitioner's criminal history, which is a right preserved by the plea agreement. To summarize, Petitioner argues that the Court overstated his prior convictions that occurred 10 years ago, because he only received probationary terms for those convictions and did not serve any time. It is important to note that Petitioner raised essentially the same argument on appeal to the Third Circuit and in his petition for certiorari to the Supreme Court, to no avail. (Dkt. 37; Dkt. 7, Ex. H.) In fact, Third Circuit summarily dismissed the appeal based on waiver grounds. (Dkt. 7, Ex. D.) Since the Third Circuit did not explicitly provide an explanation for its summary dismissal, the Court assumes that the Circuit Court accepted the government's argument, that Petitioner's claim amounts to an application for variance, not a challenge to the calculation of his criminal history, and thus is barred by the plea agreement. (Dkt. 7, Ex. C at 3 n. 2.)

The Court finds the government's argument persuasive on collateral review. As the government points out, challenges to a defendant's criminal history category are not the same as claims that a criminal history category was overstated. In *U.S. v. Williams*, 510 F.3d 416, 426 (3d

Cir. 2007), the Circuit Court was confronted with this very issue. The petitioner in *Williams* also consented to a waiver that prohibited any applications for variance or departure, but did not preclude a challenge to the calculation of his criminal history category. *Id.* Petitioner argued that this allowed him to challenge that his criminal history category was overstated. *Id.* The *Williams* court rejected petitioner's claim, and found that the claim was akin to seeking a downward variance, not a challenge to the criminal history calculation itself. *Id.*

Here, like in *Williams*, Petitioner is making the same "overstated" argument. The record shows that, at sentencing, Petitioner acknowledged that the Court had made the proper calculations as to Petitioner's criminal history category, and he stated that he was explicitly seeking a variance. Sentencing at 25. Also, like in *Williams*, Petitioner's plea agreement prohibits applications for departure, adjustment, or variance. Plea at 9. As such, by the terms of the plea agreement, Plaintiff is prohibited from making his "overstated" argument.

Even if the Court is to consider the merits of Petitioner's argument, the Court finds that no errors were made. Petitioner does not dispute that he was in fact convicted of those earlier crimes; that Petitioner received only probationary sentences does not negate his convictions. Furthermore, the Court considered Petitioner's argument that those convictions were overstated, but concluded that they were not, because the three convictions in question were all for the same kind of fraud that Petitioner was now again convicted for, indicating "a continuing pattern [of crimes] that in no way misrepresented what his accurate criminal history is." Sentencing at 29. Therefore, the Court finds that no miscalculations were made with respect to Petitioner's criminal history category.

### D. Certificate of Appealability

14

Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### IV.   CONCLUSION

For the reasons set forth above, Petitioner's Motion is DISMISSED with prejudice and the Court denies a certificate of appealability.

_____
**Freda L. Wolfson, U.S.D.J.**

Dated: 1/23/15